IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| **GRACIE GOMEZ-MEEKER and** | § | |
| **RUSSELL MEEKER, GUARDIANS OF** | § | |
| **JAKE RUSSELL MEEKER,** | § | |
| | § | |
| Plaintiffs, | § | No.: 2:21-CV-00692 |
| | § | |
| v. | § | |
| | § | |
| **WALMART, INC.,** | § | |
| | § | |
| Defendant. | | |

## NOTICE OF REMOVAL

Defendant Walmart, Inc. ("Defendant") files this Notice of Removal removing Cause No. D-307-CV-2020-01556 from the Third Judicial District Court, Dona Ana County, New Mexico to this Court pursuant to 28 U.S.C. §§ 1332 and 1441.

### I. PROCEDURAL BACKGROUND

1. On July 29, 2020, Plaintiffs Gracie Gomez-Meeker and Russell Meeker, Guardians of Jake Russell Meeker ("Plaintiffs") filed their Original Complaint in the Third Judicial District Court, Dona Ana County, New Mexico styled *Gracie Gomez-Meeker and Russell Meeker, Guardians of Jake Russell Meeker v. Walmart, Inc.*, No. D-307-CV-2020-01556. In their Complaint, Plaintiffs allege two claims. First, they assert a claim for discrimination under the New Mexico Human Rights Act ("NMHRA") based on the alleged termination of Jake Russell Meeker's employment. Second, they assert a common law claim for retaliatory discharge based on a violation of the NMHRA.

2. For those two claims, Plaintiffs seek various forms of damages. They seek lost wages damages. *See* Pl.'s Orig. Compl. ¶ 24 (alleging that Jake Russell Meeker "has not been

1

able to obtain alternate employment which compensates him at the pay rate which he earned while employed by Defendant or provides the same benefits he earned while employed by Defendant"). They seek future lost wages damages. *See id.* ("As a matter of reasonable probability, Jake Russell Meeker will be unable to obtain such alternate employment for a period of time in the future."). They seek compensatory damages. *See* Pl.'s Orig. Compl. ¶ 25 ("[P]laintiffs have suffered and will continue to suffer emotional pain, inconvenience, mental anguish, and a loss of enjoyment of life . . . ."). They seek future compensatory damages. *See id.* With respect to their common law claim, they seek punitive damages. *See* Pl.'s Orig. Compl. ¶ 26. And, with respect to their NMHRA claim, they seek attorney's fees. *See* Pl.'s Orig. Compl. ¶ 27.

3. Defendant was served in August 2020 when Plaintiffs' lost wages damages were estimated to be approximately $30,792.

4. On July 20, 2021, Plaintiffs' counsel sent a settlement demand letter to Defendant's counsel. *See Exh. A* (Pl.s' Settlement Demand dated July 20, 2021). In that letter, Plaintiffs' counsel stated that Jake Russell Meeker had not found subsequent employment after his employment ended with Walmart. *See id.* As a result, she calculated his lost wages damages through July 2021 to be $46,816 ("$11.00/hour x 38 hours/week x 4 weeks/month x 28 months"). *See id.*

5. The settlement demand also calculated Jake Russell Meeker's loss of earning capacity at $978,120.00. *See id.*

6. The letter did not quantify or calculate any other form of damages or recovery, such as mental anguish or attorneys' fees. *See id.* Plaintiffs' counsel only mentioned lost wages and future lost wages. *See id.*

7. After quantifying Jake Russell Meeker's lost wages and future lost wages, Plaintiffs' offered to settle the case for $74,500. *See id.*

8. Defendant removed this case within 30 days of receiving that settlement demand, which, for the first time, quantified Plaintiffs' damages above $75,000. This removal is thus timely filed. True and correct copies of all pleadings served on Defendant are attached hereto.

## II.     DIVERSITY JURISDICTION

### A.     There is Complete Diversity of Citizenship Between Plaintiffs and Defendant

9. The District Courts of the United States have original jurisdiction over this action based on complete diversity between the parties, in that Defendant is now, and at the time the action was filed, diverse in citizenship from Plaintiffs. Upon information and belief, Plaintiffs are "citizens of the State of New Mexico." *See* Pl.'s Orig. Compl. ¶ 1. Defendant is a Delaware corporation with its principal place of business in Arkansas. Thus, there is complete diversity of citizenship between Plaintiffs and Defendant.

### B.     The Amount In Controversy Requirement Is Met

10. The second requirement for diversity jurisdiction—that the amount in controversy exceed $75,000—is also met in this case. *See* 28 U.S.C. § 1332(a). In removal cases based on diversity jurisdiction, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000. *See McPhail v. Deere & Co.*, 529 F.3d 947, 953, 955 (10th Cir. 2008). A defendant can satisfy this burden through multiple methods, including, but not limited to, "by calculation from the complaint's allegations" or "by reference to the plaintiff's informal estimates or settlement demands." *See id.* at 954 (quoting *Meridian Security Ins. Co. v. Sadowski*, 441 F.3d 536, 540-43 (7th Cir. 2006)).

11. Here, Plaintiffs' settlement demand demonstrates that the amount-in-controversy requirement is met. Plaintiffs' estimate of Jake Russell Meeker's loss of earning capacity alone

3

establishes the amount-in-controversy. In their Complaint, Plaintiffs' seek future lost wages as one form of damages, and, in their settlement demand, Plaintiffs quantified that amount as $978,120.00—far above the $75,000 required for diversity jurisdiction. That fact alone establishes the amount in controversy. *See Jones v. Legacy Burgers, LLC*, 2021 WL 979629, at *3 (D.N.M. 2021) (Herrera, J.) (finding amount-in-controversy met after adding together various forms of damages including "front pay as well").

12. Plaintiffs' calculation of lost wages in their settlement demand also establishes the amount-in-controversy requirement is met. Plaintiffs calculated lost wage damages at $46,816 through July 2021. *See Exh. A*. Plaintiffs reached that number by quantifying Jake Russell Meeker's lost wages at $1,811 per month and multiplying that by the number of months between the settlement demand letter and his termination date of March 2019. *See Exh. A*. As a result of that formula, his lost wages totaled $46,816, according to Plaintiffs' settlement demand. Presumptively, a trial will not be held for at least another 12-14 months in light of discovery, potential dispositive motions, and the Court's scheduling. That means the period for which Plaintiffs can recover past lost wages is, in all likelihood, forty-two months (March 2019 to September 2022). At that time, using Plaintiffs' formula, Plaintiffs' lost wages will total approximately $76,062 ($1,811 x 42 months), well over the threshold for the amount-in-controversy. *See Sleep v. Schwan's Co.*, 2019 WL 2124468, at * (D.N.M. 2019) (Fouratt, Mag. J.) (finding amount-in-controversy met because plaintiff's settlement package showed that "Plaintiff's *accruing damages* had now caused her to conclude that her own estimation of her claims exceeded the jurisdictional threshold") (emphasis added). And, by adding Jake Russell Meeker's alleged *future* lost wages to his lost wages, the amount in controversy will exceed $75,000, especially considering Plaintiffs valued his future lost wages at $978,120.

13. Plaintiffs' settlement demand of $74,500 also establishes the amount-in-controversy is met. Plaintiffs' offer to settle for that amount only included a calculation for lost wages and future lost wages. *See Exh. A*. Plaintiffs did not identify any amount for other forms of damages, such as compensatory damages, punitive damages, or attorney's fees. But those other forms of damages would obviously be included in any recovery since Plaintiffs pled them in their Complaint. And those amounts would only add to the $74,500 settlement demand made by Plaintiffs.

14. For instance, in their Complaint, Plaintiffs seek an award for compensatory damages. Pl.'s Orig. Compl. ¶ 25. If Plaintiffs' lost wages and future lost wages amount to $74,500 as alleged in the settlement demand, it is not unreasonable to assume that at least $500.01 is at stake for compensatory damages to bring the total amount in controversy above $75,000. *See Legacy Burgers*, 2021 WL 979629, at *4 (finding amount-in-controversy met because, among other things, "[a] more realistic estimate of any emotional distress damages would be $10,000" but may be higher for an employment case "in which the plaintiff has suffered some sort of harassment at the hands of his or her employer"); Pl.'s Orig. Compl. ¶ 10 (alleging that Jake Russell Meeker's manager "yelled" at him, "called him a stupid white bitch…slow lazy car pusher," "struck [him] on the butt and said 'Walmart should not hire retarded people"). Therefore, Plaintiffs' allegations show that the amount for compensatory damages are more than $10,000.

15. Further adding to Plaintiffs' settlement demand of $74,500 is an amount for punitive damages, which, again, were not quantified (or mentioned) in Plaintiffs' settlement demand. Plaintiffs can recover punitive damages for their common law retaliatory discharge claim. *See Rhein v. ADT Auto., Inc.*, 1996-NMSC-066, ¶ 30, 122 N.M. 646. Again, with

5

Plaintiffs' settlement demand of $74,500 for current and future lost wages only, any amount over $500.01 for punitive damages will push the amount in controversy over the $75,000 threshold. And "a good rule of thumb for estimating the value of a punitive damages claim is to use an amount equal to compensatory damages [consisting of] back pay plus front pay." *See Legacy Burgers*, 2021 WL 979629, at *4. In this case, that would result in a punitive damages award of approximately $74,500 which, when added to $74,500 for current/future lost wages pushes the amount in controversy to $149,000—well over the $75,000 requirement.

16. Moreover, Plaintiffs asserted claims under the New Mexico Human Rights Act, which expressly permits a successful plaintiff to recover "reasonable attorneys' fees." N.M.S.A. § 28-1-3(D); *see Behrmann v. Phototron Corp.*, 1990-NMSC-073, ¶ 23, 110 N.M. 323. The "Supreme Court has long held that when a statute permits recovery of attorney's fees, a reasonable estimate may be used in calculating the necessary jurisdictional amount in a removal proceeding based upon diversity of citizenship." *See Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1340 (10th Cir. 1998) (citing *Missouri State Life Ins. Co. v. Jones*, 290 U.S. 199, 202 (1933)); *see also Salazar v. GEICO Ins. Co.*, 2010 WL 2292930, at *5-*10 (D.N.M. 2010) (Browning, J.). When attorneys' fees are added to Plaintiffs' current/future lost wages of $74,500, the amount-in-controversy requirement is met.

17. In short, the amount-in-controversy requirement is met in this case based on Plaintiffs' settlement demand letter. Their calculation of future lost wages damages of $978,120 alone demonstrates the amount-in-controversy requirement is met. Their settlement demand of $74,500 likewise meets that requirement considering Plaintiffs only included current/future lost wages in that calculation, and lost wages will accrue for at least 14 months prior to trial further increasing the amount in controversy beyond $75,000. Plaintiffs' request for compensatory

6

damages, punitive damages, and attorneys' fees will likewise add to the settlement demand of $74,500 and bring the total amount in controversy well above $75,000. *See Sierra v. Allstate Ins. Co.*, 2013 WL 12155221, at *3 (D.N.M. 2013) (holding amount-in-controversy met based on offer to settle for $72,000 because that offer was based on right to contractual damages and attorneys' fees but the actual lawsuit sought additional damages for punitive damages and emotional distress, among other things).

18. Accordingly, because this civil action is wholly between citizens of different states and because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, this Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1), and this action is removable pursuant to 28 U.S.C. § 1441.

## III. PROPER VENUE AND COMPLIANCE WITH REMOVAL PROCEDURE

19. Under 28 U.S.C. § 1441(a), venue of the removed action is proper in this Court as the district and division embracing the place where the state action is pending.

20. Defendant will promptly give Plaintiffs written notice of the filing of this Notice of Removal as required by 28 U.S.C. § 1446(d). Defendant will also promptly file a copy of this Notice of Removal with the Clerk of the Third Judicial District Court, Dona Ana County, New Mexico, where the action is currently pending, also pursuant to 28 U.S.C. § 1446(d).

21. True and correct copies of all process, pleadings, and the orders served upon Defendant in the state court action are being filed with this notice as required by 28 U.S.C. § 1446(a) and attached hereto.

22. Pursuant to 28 U.S.C. § 1446(b), this Notice Removal is filed within thirty (30) days after service of the initial pleading setting forth a removable claim.

ACCORDINGLY, Defendant hereby removes Cause No. D-307-CV-2020-01556 from the Third Judicial District Court, Dona Ana County, New Mexico on this 27th day of July, 2021.

Respectfully submitted,

KEMP SMITH LLP
P.O. Box 2800
El Paso, Texas 79999-2800
(915) 533-4424
(915) 546-5360 (FAX)

By: */s/ Clara B. Burns*
CLARA B. BURNS
State Bar No. 7738
Clara.Burns@kempsmith.com
JOSE A. GONZALEZ
State Bar No. 140798
Abe.Gonzalez@kempsmith.com

Attorneys for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served on attorneys for Plaintiffs, Connie J. Flores, Flores, Tawney & Acosta, P.C., 1485 N. Main Street, Suite B, Las Cruces, New Mexico 88001, this 27th day of July, 2021, as follows:

☐ Regular Mail, Postage Prepaid
☐ Hand Delivery
☐ Certified Mail, Return Receipt Requested
X Electronic Transmission:   Cflores@ftalawfirm.com
☐ Facsimile Transmission   (575) 652-7452

*/s/ Jose A. Gonzalez*
JOSE A. GONZALEZ

8